**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | |
|---|---|
| KENTA LITTLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-CV-00065 JMB |
| | ) |
| WALMART CLAIMS SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court upon plaintiff's response to the Order to Show Cause why this matter should not be subject to dismissal for lack of subject matter jurisdiction. [ECF No. 6]. After review of plaintiff's response, and for the reasons discussed below, the Court will dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

On September 18, 2024, plaintiff Kenta Little, a self-represented litigant, filed this civil action against Walmart Claims Services, Inc. [ECF No. 1]. Plaintiff also filed a motion to proceed in forma pauperis. [ECF No. 3]. Plaintiff asserted in his complaint that the Court has federal question jurisdiction over his complaint based on the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301, *et seq.*[1] The basis of the complaint is plaintiff's contention that he

---

[1] Plaintiff cites to the FDCA at 21 U.S.C. § 342. The FDCA begins at 21 U.S.C. § 301 and goes on for several sections. The section of the Act which relates to adulterated food is § 342.

2

purchased "an expired product" from Walmart in Vandalia, Missouri, on June 19, 2024. He claims that he then consumed the unidentified product, and it "[e]xacerbated" his preexisting brain injury and mental health conditions." He further claims that defendant Walmart Claims Services, Inc., failed to comply with Missouri Revised Statutes §§ 537.760-537.765,[2] "which led to the injuries [plaintiff] continue[s] to suffer from." Plaintiff seeks ten million dollars in damages.

On September 25, 2024, the Court directed plaintiff to show cause, in writing, as to why this action should not be dismissed for lack of subject matter jurisdiction. [ECF No. 5]. The Court explained the complaint did not allege federal question jurisdiction because he has not presented facts demonstrating that his federal rights were violated under the FDCA or that he can pursue such rights though federal law. *See Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 349 n.4 (2001); *see also* 21 U.S.C. § 342 (describing "adulterated" food); 21 C.F.R. § 110.80 (2023) (prescribing methods to prevent food from becoming "adulterated" within the meaning of the FDCA). Additionally, the Court noted that plaintiff had failed to allege complete diversity between he and the defendant in this matter; thus, plaintiff could not establish diversity jurisdiction.

**Plaintiff's Response to the Order to Show Cause**

In the response to the Order to Show Cause plaintiff states that he is a forty-seven-year-old resident of Vandalia, Missouri, and an "American Descendant of Slavery." He states that he served in the United States Army from 1996 through 2000, and because of his service he suffers from Traumatic Brain Injury. Plaintiff alleges that the Traumatic Brain Injury has caused depression, headaches, hearing loss, post-traumatic stress disorder, impaired speech, trigeminal nerve disorder and facial nerve damage.

---

[2]Plaintiff seeks relief under Missouri state law statute for strict products liability.

Plaintiff claims that the product he purchased from Bowling Green, Missouri, Walmart was Ocean Spray Ruby Red Grapefruit Juice. He asserts that the fruit juice was expired by approximately five months, and he found it to be of "foul taste" and discolored. After allegedly drinking an unknown quantity of the juice, he purportedly had blurred vision, headache, weakness, nausea, stomach pain and diarrhea. He claims that he visited the Hannibal Regional Medical Clinic, approximately one month[3] after ingesting the juice, and he was provided anti-nausea medication. Plaintiff went back to the Medical Clinic the next day to obtain additional medicine, and he was given prednisone for a rash. Approximately two months later he saw a psychiatrist and explained he was having intense dreams, depression, problems with balance, additional neurological difficulties, including headaches, and he was prescribed an anti-anxiety drug called Prazosin.

Plaintiff states that he would like to amend his complaint to sue defendant not only under the FDCA, but also under "Environmental Protection Agency (EPA) statutes for toxins in food products, including. . .the Food Quality Protection Act (FQPA). . .and the Toxic Substances Control Act (TSCA)." Plaintiff, however, has not indicated the specific statutes under which he is suing defendant.

Plaintiff also states that he would like to sue defendant in "reference [to] the National Institutes of Health [] to establish thermos-acidopholic endospore forming bacteria of the genus *Alicyclobacillus* that have the potential to cause spoilage of commercially pasteurized fruit juices. . ." Plaintiff alleges that he is also suing defendants for breach of implied warranty under Missouri state law. He has not, however, indicated which of the implied warranties he is allegedly suing under.

---

[3]In the response brief plaintiff states that he purchased the juice on June 19, 2024, and he visited the Medical Clinic on July 20, 2024. The Court is unsure if this is a typographical error, and if plaintiff meant to indicate that he visited the medical clinic within a day of drinking the juice.

4

Last, plaintiff mentions that the matter in controversy is "in excess of $75,000. Although he has not elaborated on this conclusory statement, it appears plaintiff is asserting that this Court maintains diversity jurisdiction over his claims in this lawsuit.

In his demand for relief, plaintiff once again seeks ten million dollars. He states in a conclusory fashion that he is seeking the "cost of medical treatment for nerve and/or brain injuries on average. . .$401,808 for inpatient care," which plaintiff asserts he will need the rest of his life. Plaintiff has not indicated how he came to these figures.

## Discussion

Federal courts are courts of limited jurisdiction. *Thomas v. Basham*, 931 F.2d 521, 522 (8th Cir. 1991). The existence of jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990); *see also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases"). Because plaintiff is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court has determined plaintiff has not carried his burden of establishing subject matter jurisdiction. For these reasons, the Court will dismiss this action pursuant to Federal Rule of Civil Procedure 12(h)(3).

### A. Diversity of Citizenship Jurisdiction Under 28 U.S.C. § 1332

"Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interest and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001). The burden falls

5

upon the party seeking the federal forum to demonstrate that the parties are citizens of different states. *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992).

Under 28 U.S.C. § 1332, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal business." 28 U.S.C. § 1332(c)(1). Here, plaintiff's response to the Order to Show Cause indicates that he is a resident of the State of Missouri. Although he indicates where he believes Walmart has its principal place of business, in Arkansas, he fails to indicate the state of its incorporation. Given that plaintiff has been unable to identify the state of incorporation of Walmart, he cannot establish diversity jurisdiction in this case, as he cannot establish that the parties are in complete diversity.

Even if plaintiff had properly established Walmart's state of incorporation to be one different than the residence of plaintiff (Missouri), the Court notes that plaintiff has failed to properly allege damages in excess of $75,000. The amount in controversy is to be ascertained from the complaint itself. *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353 (1961). When the Court questions whether the amount alleged is legitimate, "the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *State of Mo. ex rel. Pemiscot Cnty., Mo. v. W. Sur. Co.,* 51 F.3d 170, 173 (8th Cir. 1995) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)).

The Court finds that plaintiff's conclusory allegations regarding the amount in controversy fail to satisfy his burden of proving the jurisdictional amount by a preponderance of evidence. *See e.g., Kedrowski v. Lycoming Engines,* 2015 WL 2165798, at *4 (D. Minn. May 8, 2015) (holding that allegations of "severe emotional distress ... including but not limited to substantial fright, extraordinary stress, anxiety and apprehension culminating in severe damages and pain and suffering ... insufficient to establish the jurisdictional amount by a preponderance of the

evidence"); *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 348 (8th Cir. 2007) (punitive damages can be included but "the existence of the required amount must be supported by competent proof.").

Based on the aforementioned reasons, the Court finds that plaintiff has failed to establish diversity jurisdiction in this action. The Court will therefore turn to plaintiff's arguments for federal question jurisdiction.

### B. Federal Question Jurisdiction

Federal question jurisdiction gives district courts "original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.,* 785 F.3d 1182, 1188 (8th Cir. 2015). *See also* 28 U.S.C. § 1331. Whether a claim arises under federal law is determined by reference to the "well-pleaded complaint." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC,* 843 F.3d 325, 329 (8th Cir. 2016). The well-pleaded complaint rule provides that jurisdiction exists only when a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Markham v. Wertin,* 861 F.3d 748, 754 (8th Cir. 2017). *See also Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014) ("Under the well-pleaded complaint rule, a federal question must exist on the face of the plaintiff's properly pleaded complaint in order to establish federal question subject matter jurisdiction").

Plaintiff must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998). *See also Northwest South Dakota Production Credit Ass'n v. Smith*, 784 F.2d 323, 325 (8th Cir. 1986) (stating that "[a] non-frivolous claim of a right or remedy under a federal statute is sufficient to invoke federal question

7

jurisdiction"). "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co., Inc.,* 407 F.3d 905, 907 (8th Cir. 2005). Here, plaintiff asserts that his case implicates a federal question because he believes a cause of action arises not only under the FDCA, but also under unnamed EPA statutes, the Toxic Substances Control Act (TSCA)[4] and the Food Quality Protection Act (FQPA).

In the Order to Show Cause, the Court informed plaintiff that private litigants were unable to file suit for noncompliance of the FDCA. *See Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 349 n.4 (2001).[5] Furthermore, plaintiff has not indicated the specific EPA or TSCA provisions under which he is suing defendant. And the TSCA plainly exempts food and food additives from its regulations when they are regulated by the FDA under the FDCA. *See* 15 U.S.C. § 2602(2)(B)(vi). Moreover, as noted, the FQPA amended the FDCA in 1996. Thus, he is unable to file a private action for a perceived violation of the FQPA. Accordingly, plaintiff cannot utilize the TSCA, the FQPA or the FDCA to provide federal question jurisdiction over this matter.

Although the Court is to give plaintiff's complaint the benefit of a liberal construction, the Court will not create facts or construct claims. *See Stone*, 364 F.3d at 914-15 (refusing to supply additional facts or to construct a legal theory for a self-represented plaintiff). Given the

---

[4]The FQPA established new safety standards for pesticides used in the United States and amended the FDCA and the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) in 1996. 7 U.S.C. §§ 136, *et seq.*; *see also* 21 U.S.C. § 346. It required the EPA to set safety standards and directed the Secretary of Agriculture to collect pesticide residue data on commodities most frequently consumed by infants and children. *Id.*

[5]Applying *Buckman*, courts have rejected claims to directly enforce the FDCA by private litigants such as plaintiff. *See, e.g., Riley v. Cordis Corp.*, 525 F. Supp. 2d 769, 776–77 (D. Minn. 2009) (applying *Buckman* to a claim stemming from an injury allegedly caused by a medical device regulated under the FDCA); *Young v. PepsiCo, Inc.,* No. 20-cv-1486 (PAM/KMM), 2020 WL 4572067, at *1 (D. Minn. Aug. 8, 2020) (dismissing, pursuant to *Buckman*, plaintiff's claim that PepsiCo violated the FDCA by "mislabeling" Mountain Dew Voltage as "charged with raspberry citrus flavor" when it contained no raspberry).

8

aforementioned, plaintiff has not presented facts demonstrating this Court has federal question jurisdiction over this matter.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). A separate Order of Dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal of this Order would not be taken in good faith.

Dated this 5th day of November, 2024.

                                                HENRY EDWARD AUTREY
                                          UNITED STATES DISTRICT JUDGE